HANNIBAL HAMLIN and WILLIAM B. HAYFORD, Trustees,

*vs.*

SIMON G. JERRARD.

Penobscot.    Opinion February 4, 1881.

*Mortgage.    Railroads — consolidation of companies.    Trustees.*

Under the mortgage to the plaintiffs, purporting to convey to them as trustees, all the right, title and interest of the European and North American Railway Company in and to "all and singular its property, real and personal, of whatever nature and description, now possessed or to be hereafter acquired, including its railway, equipments and appurtenances; all the rights, privileges, franchises and easements; all buildings used in connection with said railway or the business thereof, and all lands and grounds on which the same may stand or connected therewith; also all locomotives, tenders, cars, rolling-stock, machinery, tools, implements, fuel, materials and all other equipments for the constructing, maintaining, operating, repairing and replacing the said railway or its appurtenances, or any part thereof;"

*Held 1*, that the lien of the mortgage was not lost upon rolling-stock withdrawn, under circumstances stated in the opinion, from present use upon the then broad gauge and changed to meet a contemplated narrowing of the gauge; notwithstanding the stock upon the road was kept up or improved at the same time that these materials for the narrow-gauge use were withdrawn;

*Held 2*, that repairs and improvements made upon such rolling-stock by the Consolidated European and North American Railway Company, which had acquired the right to control the road subsequently to the plaintiffs' mortgage, were in the nature of accessions to a mortgaged chattel, and subject first to the mortgage that had priority of date;

*Held 3*, that there can be no loss of identity of the original companies in the consolidation to the prejudice of the rights of prior creditors, or to the destrucion of prior liens, and that such increased values do not belong to the consolidated company as a distinct entity;

*Held*, further, that the plaintiffs, being in possession of other rolling stock, to which their own mortgage does not apply, purchased by the New Brunswick company, which consolidated with the E. and N. A. Railway Company, or the consolidated company, and mortgaged by them to other trustees; the plaintiffs, having the right to use and consume it in the performance of the duties the corporation owed to the public, and being liable to the mortgagees for their interest, under the facts stated, may recover its full value of the attaching creditors of the mortgagor, or the attaching officer; holding any part to which their own mortgage does not apply, in trust, or subject to their liability to those from whom they received possession, as they held the property before the attachments were made.

ON REPORT.

TRESPASS against the defendant, as sheriff of Penobscot county for entering plaintiffs' premises at Oldtown, September 1, 1877,

and taking and carrying away one narrow gauge locomotive engine, of value of three thousand dollars; four and a half set of wheels and truck frames, of value of four thousand dollars; one hundred and twenty pairs of wheels with axles, of value of five thousand dollars; and one hundred iron truck frame sides, of value of one thousand five hundred dollars, and twenty-six platform cars, of value of seven thousand two hundred dollars.

Writ is dated September 18, 1877. Plea is general issue, with brief statement as follows:

And for brief statement and further defence, the defendant says that by virtue of a certain writ which issued out of the clerk's office of the Supreme Judicial Court of Maine, in and for Penobscot county, in favor of James H. Haynes *et als.* and against the Consolidated European and North American Railway Company, one Jesse Prentiss, of Milford, in said county, in his capacity as a deputy sheriff in and for said county, attached the whole or a part of the property specified in plaintiffs' declaration as the property of the said Consolidated European and North American Railway Company, whose property it there and then was, and not the property of Hamlin and Hayford, trustees, as alleged in their said writ; nor was said property then and there in the possession and keeping of said Hamlin and Hayford, trustees, nor in or upon the premises of said Hamlin and Hayford, trustees, as alleged in said writ. That all the property described in said plaintiffs' writ and declaration, is not now, nor ever was, the property of said Hamlin and Hayford, trustees, and was never, before the attachment aforesaid, in the possession of said Hamlin and Hayford, trustees.

The facts sufficiently appear in the opinion.

The law court to enter such judgment as the evidence requires. The matter of damages to be hereafter determined at *nisi prius* unless the parties otherwise agree.

*Charles P. Stetson* and *William L. Putnam*, for the plaintiffs, cited: R. S., c. 51, § § 28, 47–56; *Morrill* v. *Noyes*, 56 Maine, 458; *Shepley* v. *A. & St. L. R. R. Co.* 55 Maine, 407; *K. & P. R. R. Co.* v. *P. & K. R. R. Co.* 59 Maine, 9; *Pierce* v. *Emery*, 32 N. H. 484; *Shaw* v. *Bill*, 5 Otto, 10; *Phi. W. & B. R.*

*R. Co.* v. *Woelpper*, 64 Penn. St. 366 ; *Meyer* v. *Johnston*, 53 Ala. 467 ; *Dillon* v. *Barnard,* 1 Holmes R. 386, 394 ; *Farmers L. & T. Co.* v. *S. Jo. & Denver R. R. Co.* 3 Dillon, U. S. C. C. R. 412 ; *Wilson* v. *Boyce,* 2 Dillon, 539 ; *Pierce* v. *Mil. & S. P. R. R.* 24 Wis. 551 ; *Farmers L. & Tea Co.* v. *Fisher et al.* 17 Wis. 114 ; *Scott* v. *C. & S. R. R. Co.* 6 Bissell, 529, 534 ; *Pennock* v. *Coe,* 23 Howard, 117 ; *Dunham* v. *R. &c. Co.* 1 Wallace, 254 ; *Galveston Railroad Company* v. *Cowdrey,* 11 Wallace, 459 ; *Foster* v. *Saco Manufacturing Co.* 12 Pick. 454 ; *Rowley* v. *Rice,* 11 Met. 333, 336 ; *Moody* v. *Wright,* 13 Met. 17 ; *Cook* v. *Corthell,* 11 R. I. 482 ; *Williams* v. *Briggs,* 11 R. I. 476 ; *Palmer* v. *Forbes,* 23 Ill. 300 ; *Henshaw* v. *Bank of Bellows Falls,* 10 Gray, 568.

*Henry W. Paine* and *Barker, Vose and Barker,* for the defendant.

It is admitted that this road was broad gauge till the fall of 1877.

This narrow gauge property was all prepared and purchased by the Consolidated European and North American Company.

It is proved, (and not denied) that this old stock narrowed, was replaced by new stock, and that the road was kept up to its accustomed efficiency, and more, that the rolling stock of the then broad gauge road was very materially benefited in 1874 and 1875.

It is provided—article seven, of the land grant mortgage, that the "party of the first part, may in its discretion, sell, exchange, or otherwise dispose of any locomotives, tenders, cars," and "all other personal property which may become impaired by use, or require renewal" "and convey the same free and clear of all lien of this mortgage," "but all property of whatsoever kind, obtained in place of the property sold or disposed of, shall be subject to, and bound by the lien of this mortgage." When, then, the rolling stock is broken up, and ceases to be rolling stock, it ceases to be bound by the lien, and more especially if other stock has been substituted for it.

Forty-five pairs wheels and axles, which were put on to the road by the old European and North American Railway Company,

and which came into the possession of the consolidated road at and by consolidation, having been replaced by the said consolidated company by new stock, and the mortgage of the old European and North American Railway Company, (Hamlin and Hayford, trustees,) having been made good and complete, and the same (forty-five pairs) entirely eliminated from said Hamlin and Hayford's mortgage by its own terms and agreements, the right and title to the said forty-five pairs wheels and axles is clearly in the consolidated company. More especially since the same (the forty-five pairs) was narrowed by, and the cost thereof, paid by the consolidated company.

Therefore Hamlin and Hayford, trustees, have no title to the said forty-five pairs old wheels and axles, under or by their mortgage, they being the property only of the consolidated company, the title being complete in the same.

The six pairs in paper A, manufactured by Eddy, the one pair manufactured by McDugle, and the one pair manufactured by Acadian Iron Works (per Angell's testimony, page 67,) came from the "western extention branch from St. John, westward to Vanceboro', Maine," at and by consolidation, and were narrowed by the consolidated company, the title of which is fully vested in the consolidated company, by reason of the same (old stock, not in use &c. &c.) having been replaced by said consolidated company, and thereby entirely eliminated from the lien of the mortgage of the "western extension branch from St. John, westward."

Certainly Hamlin and Hayford, who bring this suit, have no right, title or claim to the said western extension wheels and axles under their mortgage, nor ever had, neither in law nor equity.

The balance of wheels and axles, including trucks, sides, &c. was all new narrow gauge stock, and bought by the consolidated company.

Now, the consolidated corporation prepared and purchased, and was the owner of all the property when the sheriff took it.

This is neither property (the forty-five pairs wheels and axles excepted) possessed by the Maine corporation, when it made its

transfer to the trustees, Hamlin and Hayford, nor was it afterwards acquired by that corporation.

In fact, before this property (excepting the forty-five pairs old E. & N. A. and the eight pairs western extension wheels and axles) was acquired, the Maine corporation had ceased to exist; it had been merged in the consolidated company, and by and through said consolidation, and the subsequent replacement with new stock, as above stated and proved, by said consolidated company, the title to all the property sold on this execution is fully vested in said consolidated company.

The intention of the two companies, and the act of confirmation by the legislature, was a dissolution of the two companies, and a new corporation formed. *State* v. *M. C. R. R. Co.* 66 Maine, 488.

The agreement between Smith, trustee, and Hamlin and Hayford, trustees, dated Bangor, September thirtieth, 1876, (page 35) does not give said Hamlin and Hayford any right or authority to bring or maintain a suit in their names for the recovery of this property, to which Hamlin and Hayford have no title.

It is a maxim of the common law, that a person cannot grant what he has not. And it is a familiar principle that words in a deed importing a transfer *in presenti*, of goods which the mortgagor does not own, will not vest a title in the mortgagee, when the mortgagor subsequently acquires them. But if after the property has come into the possession of the mortgagor, he delivers it to the mortgagee, with the intention to ratify the mortgage, the title will vest.

It is provided in said Consolidated European and North American Railway mortgage deed to Smith and another, as follows :

"Eighth. It is further agreed that the said party of the first part, shall at the request of said trustees, (Smith and Hersey) execute and deliver such further deeds of conveyance of all the property now possessed, or to be hereafter acquired by said party of the first part, herein conveyed or intended to be conveyed, and upon the trust herein set forth, as may be necessary for the better security of said bonds."

No "such further deeds of conveyance" of the property they possessed, or thereafter acquired, have been made.

Smith took possession, as trustee under the mortgage, of the entire road and the property embraced in the deed, in October, 1875, and remained in possession till October, 1876. Did that vest a title in him to this property? In an elaborate opinion in *Jones* v. *Richardson*, 10 Metcalf, 493, it was decided that the mere taking possession of after-acquired property by the mortgagee, is not enough. It is necessary to prove that the mortgagor had delivered possession of the goods to hold under the mortgage with the view of carrying the former grant into effect.

And even that, says the court, would not be sufficient as against creditors, unless the mortgagee retains possession, or records the mortgage with the town clerk.

Smith did not retain possession, neither did he record the mortgage with the town or city clerk.

Therefore Smith could not maintain an action at law against the sheriff. The legal title to this property is still in the consolidated corporation, it is not covered by Smith's mortgage, and if Smith has no legal title, he certainly cannot pass the title of this property to Hamlin and Hayford, as he has attempted to do.

They have none, neither under their mortgage, the "agreement," nor the "bill of sale," and cannot maintain this action.

As to the equitable lien of mortgagees on after-acquired property, see: *Mitchell* v. *Winslow*, 2 Story Rep. 630; *Pennock* v. *Coe*, 23 Howard, 117; *Dunham* v. *Peru, &c. Railway Co.* 1 Wallace, 254; *United States* v. *New Orleans Railroad*, 12 Wallace, 362; 2 Redfield on Railways, 455.

The questions raised in this case are fully discussed in Redfield on Railways, and in Jones on Mortgages, and Jones on Railroad Securities, and the authorities are therein fully cited upon the one side and the other. We refer to them as follows, viz: "After-acquired property", Jones on Railroad Securities, c. 4, 5, § § 121, 132, 133, 154; 1 Jones on Mortgages, c. 4, § 149 to c. 5, Rolling Stock; Personal Property. Also, to: *Hoyle* v. *P. & M. R. R. Co.* 54 N. Y. 314 (Am. vol. 13, 595); *Randall* v. *Elwell*, 52 N. Y. 521 (Am. vol. 11, 747); *Strickland* v. *Parker*, 54 Maine, 263; 1 Jones on Mortgages, c. 11, § 452; *McCaffrey* v. *Woodin*, 65 N. Y. 459 (Am. vol. 22, 644.)

SYMONDS, J. In this action of trespass against the sheriff of Penobscot county, damages are demanded for the acts of his deputy in taking upon writs, and selling upon executions, against the Consolidated European and North American Railway Company, certain pieces of narrow-gauge rolling-stock, to which the plaintiffs claim title superior to that of the judgment debtors.

The twenty-six platform cars, mentioned in the declaration, were replevied by the plaintiffs from the possession of the officer. The locomotive engine was never removed or sold by him, but was either replevied or abandoned. As to these, therefore, no claim for damage arises here. The subjects of the present action are the four and a half sets of wheels and truck frames, one hundred and twenty pairs of wheels with axles, and one hundred iron truck-frame sides, of the alleged value of four thousand dollars, five thousand dollars and one thousand five hundred dollars, respectively. These were attached, January 13, March 7, and March 31, 1877, and sold, January 9, 1878, by the defendant's deputy, as the property of the consolidated company. The question is upon the plaintiffs' right to them at the date of the attachments; and this is the only question, as the terms of the report reserve a further hearing at *nisi prius*, for the assessment of damages, if the plaintiffs prevail.

The European and North American Railway Company, was a corporation chartered by this State, August 20, 1850, to build a railroad from the city of Bangor to the eastern boundary of Maine, so as best to connect there with a railroad from the city of St. John, to be constructed to that point under a charter from the province of New Brunswick. This railroad in Maine, then in process of construction, together with the timber lands which it had received from the State, on March first, 1869, was conveyed to two trustees, of whom the plaintiff, Hannibal Hamlin, is one, and the other is represented in regular succession by the plaintiff, William B. Hayford, to secure the payment of the principal and interest of two thousand bonds of one thousand dollars each, issued by the corporation. The provisions of this deed to the plaintiffs, in mortgage and in trust, will be more fully considered. It is enough at present that under it they claim title to the property in controversy.

The corporation, organized under the province charter, was called the European and North American Railway Company for extension from St. John westward, and constructed its road to the point of connection with the road built under the charter from Maine, so that the two made a continuous line of railway of the same gauge from Bangor to St. John. The New Brunswick road was conveyed to trustees in a similar way, July first, 1867, to secure an indebtment of two millions of dollars in mortgage bonds.

These two roads, built and equipped under different charters, by the authority of different states, and by the use of distinct funds, appear to have been controlled by separate management, as independent lines, until October 19, 1872, when articles of union and consolidation between them were drawn, which were adopted and ratified by the corporations, to take effect, we judge, on the first day of December, 1872. Legislative authority from the state and the province for making the union, is recited in the articles of agreement, and a special act of confirmation was passed by the legislature of Maine, March 3, 1874. By the terms of these articles, the two companies were to become one corporation, under the name of the Consolidated European and North American Railway Company.

On December fifth, 1872, a conveyance to trustees was made by the consolidated company of the whole line, and all its property, to secure the payment of six millions in new bonds; five millions of which were to be issued only for the redemption and payment of the earlier bonds of the companies composing the consolidated line; "the proceeds of the residue of said consolidated bonds to be used by the directors to provide for further and additional way and tracks, rolling stock, equipments, and railway improvements, and to provide for the purchase of and consolidation with other connecting railroads, and to pay the debts of said New Brunswick company and said Maine company, existing at the time this agreement takes effect, and for no other purposes whatever."

The consolidated company continued in the possession and control of the road till October, 1875, when formal application

was made by bondholders to the surviving trustee under this last named mortgage, to take possession of the mortgaged estate for breach of condition, and thereupon, upon request from the trustee, a majority of the directors in writing on October 27, 1875, surrendered and delivered to him "the premises and property named and described in the mortgage deed. . . . . and all the property used and provided for operating the railroad of said company for the uses and purposes named in said mortgage deed ;" and appointed an agent to go over the road with the trustee and put him in possession thereof. This was done.

This action of the majority was approved at a meeting of the directors held on the second of December, 1875 ; and the trustee under the consolidated mortgage continued in the possession and operation of the road until, in September, 1876, a bill in equity was filed by the present plaintiffs to recover possession of the road in Maine under the prior mortgage to them in trust. Pending this bill in equity, an agreement was made and entered upon the docket by which Benjamin E. Smith, the trustee under the consolidated mortgage, delivered to the plaintiffs, "to hold as provided in paragraph third, in said land grant mortgage to them, the railroad from Bangor to the east line of the State of Maine, and all property connected therewith, rolling-stock, fuel, equipments, and all the railroad and property belonging thereto from Bangor to the State line, in his charge and possession as said trustee ; and if there is any property not covered by said land-grant mortgage taken or used by said trustees, or to which said trustees are not entitled by the terms of said mortgage to them, or by law, the rights of said Smith shall not be impaired by said transfer of possession. . . . . "

Under this agreement, and by virtue of their mortgage,. the plaintiffs on October .2, 1876, went into possession of the road from Bangor to the east line of the State, and continued to operate it until, and after, the date of the attachments under which the defendant justifies. Precisely what was the property connected with the railroad, of which the plaintiffs then took and subsequently retained the possession, will be the subject of later inquiry.

It is in evidence that in 1873, while the consolidated company was operating the road, a change of the gauge, from broad to narrow, was contemplated. Nothing appears upon the records of the stockholders or the directors relating to it, nor was the change effected till the summer and fall of 1877, but that it was intended by those in charge of the road, and that certain preparations were made for it, as early as 1873, is apparent. In this way and for this purpose, during that year the narrow gauge rolling-stock, which is the subject of the present controversy, was accumulated upon and near the grounds of the company at Oldtown. The change of gauge being delayed, it remained there till the time of the attachments, except that, lying so long idle, some parts of it which could be easily changed over were taken, when convenient, and used upon the then broad gauge. The purpose of the consolidated company, however, in purchasing and preparing it was undoubtedly to meet the anticipated change of gauge. It was not obtained with a view to use it upon the road as it then was, nor could the property attached, as a whole, have been so used without change.

It is probable and, we think, proved by the testimony that there were three sources from which this narrow gauge stock came. Some of it was changed from stock originally belonging to the Maine corporation, some from stock which the province company owned, before the consolidation; and some was new. The purchases of the new, and the repairs upon the old, were made at the order and expense of the consolidated company.

This property, so situated, the plaintiffs claim to hold under the broad provisions of the mortgage to them of the road in Maine. They gave the defendant the written notice required by R. S., c. 81 § 42, in due time before commencing this action; claiming therein to hold it under the mortgage to them, and also as bailees of the property embraced in the consolidated mortgage.

We understand the grounds of defence to be, *first*, that this stock was embraced in neither mortgage, and was open to attachment and seizure on execution against the consolidated company; *secondly*, that, as to so much of it as was new, it was the property of the consolidated company, purchased by them, and never

subject to any lien in the plaintiff's favor, so that as to their claim it is immaterial - whether the consolidated mortgage to other trustees included it or not; in other words, that it was not embraced in the mortgage to plaintiffs, which is their only source of title; that, as to so much as was at first the property of the province company and was changed to narrow gauge by the consolidated company, the plaintiffs are equally without pretense of title; the original purchase having been made by one company, and the repairs by another, neither of which has given the plaintiffs any mortgage; that, as to so much of it as once belonged to the Maine company, if it was then subject to the mortgage to the plaintiffs, it had been relieved of that lien under the seventh section of the trusts declared in the mortgage, to the effect, in substance, that the railroad company may sell, exchange, or otherwise dispose of rolling stock, or other personal property impaired by use or requiring renewal, and convey the same free from all lien of the mortgage, the property substituted therefor being held and bound in its place; that this right of the Maine company passed to the consolidated company, when formed, and that inasmuch as the stock upon the road was kept up or improved at the same time that these materials for the narrow gauge use were withdrawn, such a disposition of them discharged the mortgage, *sub modo*, transferring its force and effect from them to the stock supplied and set upon the road in their stead.

The last branch of the second ground of defence is distinct and independent, and may be considered at once by itself. It assumes that the plaintiffs once had a right under their mortgage to a part of the property attached, which they have lost; and relates only to that part.

We cannot assent to the proposition that the gradual changing of such parts of the broad gauge stock, as needed repair and could be withdrawn from immediate use without detriment, into narrow gauge stock, in view of an expected change of gauge, was such a disposition of it as under the clause of the mortgage cited would release and transfer the mortgage lien. This was neither a sale, exchange nor disposition of the property by the road. It was, on the contrary, the retention of it, of its title

and possession, at the same time fitting it to serve new uses, which the requirements of the road, its management in a new and legal way, were expected to demand. A change of gauge cannot be made at once, nor without preparation. We see no more reason why, under the clause cited, the lien of the mortgage should be lost upon stock taken off from the road to be changed to fit a new gauge, expected to be made, than for its being lost upon any piece of rolling stock, not required for the present operation of the road and removed for the purpose of repair. In neither case does the company dispose of it. In both instances, it remains the property of the corporation and, although unused for the time, it does not lose its character as property connected with the use of the franchise and designed to serve the purposes of the charter. Had there been a failure to change the gauge, it is apparent from the statements of the witnesses that the materials of the stock attached, and certain parts of it even without change, were of use and value on the broad gauge. Whether it be regarded as new narrow gauge stock procured under an expectation of change, or as mere materials that the broad gauge road might make available, it still pertained to the road and its franchise, and, if the mortgage to plaintiffs held it when in use as broad gauge stock on the Maine road, the mortgage upon it was not discharged nor the security of the bondholders in whose behalf the plaintiffs' act impaired, under the seventh clause, by the changes made in it under such circumstances, nor by its temporary disuse, awaiting the narrowing of the gauge.

The result, then, is, that this claim in defence is not tenable ; that if that part of this stock which came into the consolidation from the Maine road, about forty-five pairs of wheels and axles, according to the testimony of Mr. Angell, was once subject to the plaintiffs' mortgage, the facts of the case were not such as to discharge the mortgage, *pro tanto*, by the substitution of new for old, sold, exchanged, or otherwise disposed of.

It remains to inquire whether at the date of the attachments the mortgage to plaintiffs as trustees gave them a valid lien upon either, or all, of the three classes of property attached ; distinguishing the classes only by the sources from which the property came, or the title was derived.

The question may perhaps conveniently be divided into two.

I. Overlooking for the moment the fact of consolidation and the relations of the uniting roads, suppose all that was done in purchasing and preparing the stock attached had been done by the old European and North American Railway Company, which mortgaged to the plaintiffs, would the mortgage have covered the same property as the attachments, and been valid against them?

II. What was the effect of the consolidation, and what are the intervening rights of the consolidated company, or its other constituent?

I. The first question assumes, it will be seen, that the Maine company had been in possession of its road, subject to the mortgage to the plaintiffs, had intended a change in gauge and with that view had altered some old, and bought some new stock, to fit the new gauge, the change had been delayed, the plaintiffs had taken possession for condition broken, and the stock so collected had remained idle, deposited on or near the railroad grounds, till the attachments were made. It assumes facts as nearly parallel as possible with the facts of the case at bar, except that, instead of having three companies to deal with, the plaintiffs' mortgagors are the only actors on that side of the transaction.

The mortgage to the plaintiffs, after describing the timber lands granted, purports to convey all the company's "right, title and interest in and to all and singular its property, real and personal, of whatsoever nature and description, now possessed or to be hereafter acquired; including its railway, equipments, and appurtenances; all its rights, privileges, franchises, and easements; all buildings used in connection with said railway or the business thereof, and all lands and grounds on which the same may stand or connected therewith; also, all locomotives, tenders, cars, rolling stock, machinery, tools, implements, fuel, materials, and all other equipments for the constructing, maintaining, operating, repairing and replacing the said railway or its appurtenances, or any part thereof."

The validity of mortgages of the property, and even of the franchises, of railroads in this State is recognized both by statute and by decision. R. S., c. 51, § 47; *Shepley* v. *Atlantic and*

*St. Lawrence R. R. Co.* 55 Maine, 407 ; *Kennebec and Portland R. R. Co.* v. *Portland and Kennebec R. R. Co.* 59 Maine, 9, 23.

The road was in the process of construction when the vote of the stockholders was passed, directing the issue of the bonds and the mortgaging of the whole line from Bangor to the eastern terminus, part of which only was completed, to secure them. We think the vote contemplated and authorized such a mortgage as the directors gave.

We regard it as settled by the weight of authority that any property connected with the use of the franchise of a railroad corporation for the purposes intended by its charter, to be sub- sequently acquired, may be effectually mortgaged. The validity of such a lien upon after acquired property is distinctly held by this court in *Morrill* v. *Noyes*, 56 Maine, 458, 471, at least against a later mortgage given after the property was in existence and in the possession of the company ; and the language of the court is quite as applicable to the case of a subsequent attaching creditor. "That a mortgage of a railroad and the franchises of the company with all the rolling stock then owned and to be afterwards acquired and placed upon the road, will create a valid lien upon cars and engines subsequently purchased, there would seem to be no longer any doubt."

"It may therefore be regarded as judicially settled, with little or no divergence of opinion, that in equity a mortgage of a rail- road will be held to apply to after-acquired rolling-stock, and other personal property, if the terms of the mortgage cover such future acquisitions ; with the qualification, however, that the mortgage will attach to such property subject to the liens existing upon it when it comes into the hands of the mortgagor."

The authorities upon this point are freely cited in the elaborate briefs in this case. The following are important cases, illustrat- ing the principles involved : *Pennock* v. *Coe*, 23 How. 117 ; *Dunham* v. *Railway Co.* 1 Wall. 254, 266 ; *Galveston Railway* v. *Cowdrey*, 11 Wall. 459, 481 ; *United States* v. *New Orleans Railroad*, 12 Wall. 362 ; *Shaw* v. *Bill*, 5 Otto, 10 ; *Meyer* v. *Johnson*, 53 Ala. 237, 324 ; *Scott* v. *Railroad*, 6 Biss. 529,

535; *Maryland* v. *North Central*, 18 Md. 193; *Pullan* v. *Cen. and Chi. Railroad*, 4 Biss. 35, 43; *Brett* v. *Carter*, 2 Lowell, 58; *Barnard* v. *Nor. and Worc. Railroad*, 4 Clifford, 351; *Mitchell* v. *Winslow*, 2 Story, 630; *Pierce* v. *Emery*, 32 N. H. 484; *Cook* v. *Corthell*, 11 R. I. 482; *Hope* v. *Hayley*, 5 Ellis and Bl. 829; *Holroyd* v. *Marshall*, 10 House of Lords, 191, 220.

There can be no doubt that, on the hypothesis on which we are now proceeding, namely, that the plaintiffs' mortgagors accumulated this stock, it would have been embraced within the description of the property mortgaged. It certainly was property, real or personal, connected with and intended for the use of the road as a railroad; not for its present, immediate use, but for its use in the event of an expected change, for which it was necessary to prepare. It was covered by the general and by the specific designation of property in the mortgage.

It is not necessary to enter upon the vexed question of what is the precise legal nature of railroad rolling-stock. Whether it is to be regarded as a fixture, or a mere accession acquired under the franchise as a necessary incident, and so indispensable to its exercise, and to the operation of the road, as to become a part of it; whether there may be other considerations which include it within the entirety of the road and affect it with the characteristics of realty; or whether on the contrary the fact that there is neither annexation, immobility from weight nor localization in use—*Hoyle* v. *Plattsburg and Montreal Railroad*, 54 N. Y. 314—is decisive, under all the circumstances, of its character as personal estate, are questions on which the courts are at variance. They do not necessarily arise here. For the present purpose, we shall treat this rolling-stock, which was prepared with reference to a change of gauge that did not take place till after the attachments, and so had not been placed upon the rails nor fitted to them as they then were, as personal property. But, if this is conceded, it is still personal property of a distinctive character and of a kind that, supposing it to have been acquired by the plaintiffs' mortgagors, we think the mortgage intended and was effective to convey. It is not like the State claims against the .

federal government, assigned in trust for the benefit of this railroad, and which it is not pretended were included in the mortgage ; nor like the earnings of the road in carrying freight acquired after the date of the mortgage, the legal title to which, with entire reservation as to what the result might be in equity, was held in *Emerson* v. *European and North American Railroad*, 67 Maine, 387, not to pass to the trustee under the consolidated mortgage till his possession began. The rents and profits of the mortgaged estate usually go to the mortgagor, till reduced to the possession of the mortgagee. The mortgage does not purport specifically to convey such earnings nor claims against the government. But all rolling-stock to be acquired, as well as materials and equipments for constructing, maintaining, operating, repairing and replacing the road and its appurtenances or any part thereof, are within the specific statement of property mortgaged.

"If the engines and cars are not fixtures, they are so connected with the railroad, and so indispensable to its operation, that there is a clear distinction between them and other kinds of personal property. They may well be held to be exceptions to the general rule that property not *in esse* cannot be conveyed. We do not mean to intimate that rolling-stock to be subsequently acquired could be mortgaged without the railroad. But when the railroad itself is mortgaged with the franchise, the rolling-stock to be acquired for the purpose of completing or repairing it is so appurtenant to it, that the company have a present, existing interest in it sufficient to uphold the grant of both together, the one as incident to the other. Their title to the railroad is the foundation of an interest in the cars and engines to be acquired for its use."

We think that such property as this, of a class specially mentioned in the mortgage, acquired for lawful railroad purposes, on hand for present use, or to meet expected requirements, is held by the mortgagors subject in equity to the mortgage from the time their title and possession accrued, and that when the trustees become actually possessed of it under the mortgage, they may hold such possession at law against the attaching creditors of the corporation. "At law, property, non-existing, but to be acquired

at a future time is not assignable; in equity it is so.  At law, although a power is given in a deed of assignment to take possession of after-acquired property, no interest is transferred even as between the parties themselves, unless possession is actually taken; in equity it is not disputed that the moment the property comes into existence the agreement operates upon it." *Holroyd* v. *Marshall, supra.*

The mortgage under which the plaintiffs claim does not appear to have been recorded as a chattel mortgage.  The attachments would therefore take precedence of it but for the fact appearing in evidence, that the plaintiffs were in possession when the attachments were made.

It is true that in one notice given to the officers and employees by the trustee under the consolidated mortgage, when he took possession, he declares that he has taken possession of the railroad and "all property used in operating the same;" which description might not include the property in controversy.  Substantially similar language is used by the plaintiffs in one notice given by them of the fact of their having taken control.  But, as we have already seen, the consolidated company in writing surrendered to their trustee "the premises and property described in the mortgage deed . . . . and all the property used and provided for operating the railroad."  In another public notice, Smith describes himself as taking "possession of all the property named in said mortgage, for condition broken," and this language is also followed by the plaintiffs in one notice given by them of the fact of their possession.  By the docket entry, under the bill in equity, we have seen, Smith delivered to the plaintiffs the railroad from Bangor to the State line, "and all property connected therewith and  . . . . belonging thereto," with the reservation before stated; and the notice there given by him, October 2, 1876, conforms very nearly to the docket entry.

But, independently of these proceedings in writing, the testimony of witnesses satisfies us that Smith, while he had charge of the road as trustee, had actual possession of this narrow gauge stock, and that it was delivered by him to the plaintiffs and by them retained till the attachments.  At both times, we

think it was included in the inventories of corporate property taken by the trustees; checked and marked as it was set down therein. It was under the charge of their servants. The journals were painted twice by their order to protect them from rust. It was all upon railroad premises and adjacent grounds. We have little hesitation in finding from the report the fact that it was in the plaintiffs' possession under their mortgage at the date of the attachments.

With this fact established, under our statute which declares such a mortgage void, except between the parties, "unless possession of such property is delivered to and retained by the mortgagee, or the mortgage is recorded," the unrecorded mortgage of personalty, takes precedence of the attachments. The New York statute, unlike ours, seems to require "an immediate delivery, followed by an actual and continued change of possession," to make the unregistered mortgage effectual. Under our law, if the mortgage is in force between the parties, and the mortgagee takes possession under it before the attachment and is in possession then, the mortgage holds. In other words, there may be a taking of possession by the mortgagee at a later date than the mortgage, just as it may be recorded later, and with the same effect. The want of immediate delivery of property at the date of the mortgage does not render it void. It is valid against attaching creditors from the time of record, or of possession taken. *Beeman* v. *Lawton*, 37 Maine, 544–5; *Wheeler* v. *Nichols*, 32 Maine, 233, 241.

We reach the conclusion, then, that if only the funds of the old European and North American company had gone into the stock attached, and it had been procured and kept by them in the same manner and under the same circumstances, as it was by the consolidated company, it would have been held by the plaintiffs' mortgage, and that the want of record, they being in possession, would have given the attachments no validity against them.

II. It would be an important question, if it were directly presented, whether the net income of the property of the Maine company, so far as it became invested in property such as is

described in that mortgage, even if the investment were made by a new corporation that had acquired the right to run the road, could ever rightfully be diverted from its legitimate use in lending additional security to the first mortgage bondholders. It is clear that all accessions to the road and its appurtenances in Maine, after consolidation as before, were accessions to a mortgaged estate, and subject first to the mortgage that has priority of date. If the consolidated company increased the value of mortgaged property by the avails of a later mortgage, such mortgage must be postponed to the earlier one on each part, just as if each company separately had put a second mortgage on its own line of road. The consolidated company assumed the debts of its several parts, and recognized the prior liens upon them. It assumed also, by force of law, the burden of having any increased value of the road and its appurtenances, go as security, first, for those prior liens. It cannot claim that its duty was merely to keep them *in statu quo*, in as good condition as when received, and that, as against the first mortgagees, additions and improvements belong to itself as a distinct entity. If such a claim were sustained, the very income of the property of the Maine road might go to swell its value, and the clauses conveying future acquisitions become void of effect; although the newly acquired property made part of the value of the road itself. The first mortgage on the Maine road, and the first mortgage on the New Brunswick road, remain the first liens on all acquisitions of the consolidated company, which issue from, and become part of the estate to which those mortgages applied. A due regard for vested interests imperatively demands such a legal conclusion and effect. To reach this result, if the original companies have ceased to exist, or to be capable of organization and action, the consolidated company, notwithstanding the articles of union declare it one, must still be regarded, to save the rights of prior creditors, as two, one in Maine, and one in New Brunswick, having the same name and officers, and each representing the original company to whose rights and liabilities it succeeded; with which it has a unity of interest and of obligation. There can be no loss of identity of the original companies in the consolidation, to the

prejudice of the rights of prior creditors, or to the destruction of prior liens. See *Central Railroad & Banking Co.* v. *Georgia,* 92 U. S. 665.

Whether the principles of equity proceeding would in any case go further than this, and not only retain for the security of the first mortgagees all accessions to the road and its appurtenances made by the consolidated company, but also give them the right to hold, when reduced to their possession, articles not accessory, purchased by the net income of the mortgaged property, meaning by the net income, strictly the value of the use of the property itself; whether, in this case on such ground as that, the plaintiffs could claim a lien upon the new stock and that which came from the New Brunswick road to the extent of their interest, as above stated, in the expenditure thereon by the consolidated company; whether the mortgage gave them a right to the income of the mortgaged estate, so invested and reduced to their possession, that could not be lost upon consolidation, is a question that need not now be considered.

The plaintiffs, at the date of the attachments, had a valid lien under their mortgage upon that part of the stock attached, which came originally from the Maine road to the extent of its value, the repairs upon it being mere accessions to a mortgaged chattel. They were in possession of the new stock, and that which came from the province road, the directors of the consolidated company having put their trustee in possession of it, and he having yielded to the plaintiffs, with the reservation that his legal rights were not to be prejudiced by such transfer of possession. The plaintiffs had the right to use and consume it in the performance of the duties the corporation owed to the public, on the fulfillment of which the interests of all depended. The whole was subject to the consolidated mortgage, and that was the first lien upon it, except as the Maine or province mortgage took precedence. The attachments are not justified. The mortgagee in possession under these circumstances, might recover its value against the attaching creditor of the mortgagor. One in possession for the mortgagee, and liable to him for his interest, should recover the same. The

plaintiffs held the part to which their own mortgage applied in trust for their bondholders at the date of the attachment. They held all besides this, in trust for the bondholders under the other mortgages to the extent of their several interests, and under the terms of the report, are entitled to recover the value of the whole, at the date of the trespass, holding any part to which their own claim does not attach in trust, or subject to their liability to those from whom they received possession, as they held the property before the attachments were made.

*Judgment for the plaintiffs.*
*Damages to be assessed at*
*Nisi Prius.*

APPLETON, C. J., DANFORTH, VIRGIN and PETERS, JJ., concurred. BARROWS, J., did not sit.